IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

CORY VERNE, individually, and on behalf of a
Class of others similarly situated,

        Plaintiff,

    v.                     Case No. 6:17-cv-03051-MDH

QUEEN CITY ROOFING & CONTRACTING CO.,  **ORAL ARGUMENT REQUESTED**
a Missouri corporation,

        Defendant.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
ON LIABILITY UNDER THE MISSOURI PREVAILING WAGE ACT**

This motion presents the court with a single issue:

> Missouri law requires contractors on government projects to
> pay its workers at the prevailing wage—payable in a
> combination of wages and benefits. Queen City does not pay its
> workers at the prevailing wage rate on government jobs.
> Instead, it diverts most of the additional money owed the
> workers into a companywide benefits fund. The workers
> receive no actual benefits from these additional contributions.
> Has Queen City satisfied its prevailing wage obligations?

## TABLE OF CONTENTS

I.     Uncontroverted Material Facts .............................................................................. 1

II.    Introduction ........................................................................................................... 8

III.   Argument ............................................................................................................... 9

       A.     Summary judgment standard .................................................................... 9

       B.     The Missouri Prevailing Wage Act ......................................................... 10

       C.     The Court should follow the intent of the legislature as stated

              in its explicit statement of the public policy behind the PWA

              and give meaning to every word in the definition of

              "prevailing hourly rate of wages." ......................................................... 11

       D.     Queen City has failed to pay its workers at no less than the prevailing

              hourly rate on government projects as required by the PWA ............................ 13

IV.    Conclusion ........................................................................................................... 18

# TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................................................ 9

*Behlmann v. Century Sur. Co.*,
   794 F.3d 960 (8th Cir. 2015) ........................................................................................ 11

*B.W.A. v. Farmington R-7 Sch. Dist.*,
   554 F.3d 734 (8th Cir. 2009) ........................................................................................ 11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................................ 9

*Chester Bross Constr. Co. v. Mo. Dep't of Labor & Indus. Rels.*,
   111 S.W.3d 426 (Mo. Ct. App. E.D. 2003)................................................................. 11

*Cincinnati Ins. Co. v. Bluewood, Inc.*,
   560 F.3d 798 (8th Cir. 2009) ........................................................................................ 11

*Div. of Lab. Stds. v. Friends of the Zoo of Springfield, Missouri*,
   38 S.W.3d 421 (Mo. 2001) ........................................................................................... 12

*Hammontree v. Safeco Ins. Co. of Ill.*,
   2016 U.S. Dist. LEXIS 160826 (W.D. Mo. Nov. 21, 2016) ...................................... 9

*Hartley v. Suburban Radiologic Consultants, Ltd.*,
   295 F.R.D. 357 (D. Minn. 2013) ................................................................................... 9

*Henry County Water Co. v. McLucas*,
   21 S.W.3d 179 (Mo. Ct. App. W.D. 2000)........................................................... 10, 12

*Huskey v. Queen City Roofing & Constr. Co.*,
   523 S.W.3d 610 (Mo. Ct. App. 2017) ......................................................................... 13

*Long v. Interstate Read-Mix, L.L.C.*,
   83 S.W.3d 571 (Mo. Ct. App. 2002) ..................................................................... 10, 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................................................ 9

*McGuire v. Christian County*,
   442 S.W.3d 117 (Mo. Ct. App. S.D. 2014) ................................................................ 11

iii

*Miree Constr. Corp. v. Dole*,
    930 F.2d 1536 (11th Cir. 1991) ................................................................. 15, 16, 17

*Mortenson v. Leatherwood Constr., Inc.*,
    137 S.W.3d 529 (Mo. Ct. App. 2004) ...................................................................10

*Quinn v. St. Louis County*,
    653 F.3d 745 (8th Cir. 2011)................................................................................ 9

*Standard Fire Ins. Co. v. Knowles*,
    133 S. Ct. 1345 (2013) ........................................................................................ 9

*State ex rel. Blue Cross & Blue Shield v. Anderson*,
    897 S.W.2d 167 (Mo. Ct. App. 1995) ...................................................................10

*State ex rel. Evans v. Brown Builders Elec. Co.*,
    254 S.W.3d 31 (Mo. banc 2008) ..........................................................................11

*State ex. rel. Laszewski v. R.L. Persons Construction, Inc.*,
    136 S.W.3d 863 (Mo. Ct. App. 2004) ............................................................ 10, 12

*State ex rel. Webster v. Camdenton*,
    779 S.W.2d 312 (Mo. Ct. App. S.D. 1989) ...........................................................11

*Thomas v. A.G. Elec., Inc.*,
    304 S.W.3d 179 (Mo. Ct. App. 2009) ...................................................................12

*United States v. Birmingham Constr. Co.*,
    347 U.S. 171 (1954) ............................................................................................16

*United States v. Coren*,
    2008 U.S. Dist. LEXIS 71564 (E.D.N.Y. Aug. 29, 2008) .........................................17

*United States v. Coren*,
    2011 U.S. App. LEXIS 19681 (2nd Cir. Sept. 27, 2011)..........................................17

*William J. Lang Land Clearing, Inc. v. Adm'r, Wage & Hour Div., U.S. Dept. of Labor*,
    520 F. Supp. 2d 870 (E.D. Mich. 2007) ........................................................... 17, 18

40 U.S.C. § 276 ........................................................................................................10

40 U.S.C. § 276a ......................................................................................................10

40 U.S.C. § 3141.......................................................................................................10

Case 6:17-cv-03051-MDH   Document 71   Filed 02/26/18   Page 4 of 25

40 U.S.C. § 3142.............................................................................................................................10

Mo. Rev. Stat. §§ 290.210 .......................................................................................... 12, 13, 14

Mo. Rev. Stat. § 290.220.........................................................................................10, 11, 12, 16

Mo. Rev. Stat. § 290.230.................................................................................................. 12, 13

Mo. Rev. Stat. § 290.250...............................................................................................................12

Mo. Rev. Stat. §§ 290.300 ..........................................................................................................13


Fed. R. Civ. P. 56.......................................................................................................................... 9

**SUPPORTING SUGGESTIONS**

## I. Uncontroverted Material Facts

1.      Queen City Roofing & Contracting Co. ("Queen City") is a company engaged in the business of installing roofing and sheet metal systems and providing related services.

> CITATION: **Ex. 1** Deposition of Lawrence A. Stock taken June 23, 2015 ("Stock 1st Dep.") 14:13–15:18.

2.      Queen City's workforce is divided into three departments: roofing, sheet metal, and office staff.

> CITATION: **Ex. 1** Stock 1st Dep. 30:22–31:2; **Ex. 2** Deposition of Lawrence A. Stock taken January 19, 2018 ("Stock 2d Dep.") 7:19–22; **Ex. 3** Deposition of Michael Katrosh taken February 20, 2016 ("Katrosh 1st Dep.") 58:18–59:1.

3.      Queen City compensates its workers with a combination of cash wages and benefits.

> CITATION: **Ex. 1** Stock 1st Dep. 78:5–79:11; **Ex. 4** Deposition of Cecelia Barr taken on January 11, 2018 ("Barr Dep.") 18:13–22:25 (providing an overview of Queen City's payroll processes and confirming that it has not changed during the relevant time period).

1

4. The benefits Queen City provides include contributions to the workers' accounts with the company's 401(k) plan, at a rate of 5.8% of gross wages paid, and contributions to the company's so-called Voluntary Employee Benefits Association (the "VEBA") at the rate of $3.75 for every hour worked (the "standard VEBA contribution").

> CITATION: **Ex. 1** Stock 1st Dep. 30:16–21, 78:5–80:6 (explaining example of pay calculation in non-prevailing wage week); **Ex. 2** Stock 2d Dep. 12:7–15; **Ex. 3** Katrosh 1st Dep. 58:12–17, 59:2–11, 59:12–64:14 (inter alia confirming that pay system has been the same for all roofing and sheet metal employees, without exceptions, since 2007); 80:18–24.

5. Through the VEBA, Queen City provides its workers, and in some cases their dependents, with the following fringe benefits: health insurance, reimbursement of out-of-pocket medical expenses up to $1,500 per year, dental insurance, and accidental death and dismemberment insurance.

> CITATION: **Ex. 3** Katrosh 1st Dep. 105:8–18; 184:20–188:23; *see also* **Ex. 1** Stock 1st Dep. 100:15–103:8 (explaining that hourly employees are only allowed family insurance benefits if they have worked for Queen City since 2007 whereas salaried office employees are eligible for family benefits regardless of their tenure).

6. During the time period February 16, 2014 through September 24, 2017, the $3.75 standard VEBA contribution was sufficient to pay for all the fringe benefits provided to Queen City's workers.

> CITATION: **Ex. 4** Barr Dep. 92:14–99:5 (explaining how to read Queen City's VEBA contribution summaries); **Ex. 5** Barr Dep. exhibit 84 (Monthly VEBA Contribution

Summary); **Ex. 6** FRE 1006 Summary: Field Worker VEBA Contributions for 6/1/2014–5/31/2017 (showing $835,200.94 in contributions based on Standard contributions); **Ex. 7** FRE 1006 Summary: Companion Life Insurance Monthly Premium for 6/1/2014–5/31/2017 (showing $59,384.01 in premiums paid); **Ex. 8** FRE 1006 Summary: Anthem Health Insurance Monthly Premium for 6/1/2014–5/31/2017 (showing $647,129.91 in premiums paid); **Ex. 9** FRE 1006 Summary: Medical Reimbursement Payment for 6/1/2014–5/31/2017 (showing $74,110.67 in benefits paid to Field Workers). These amounts calculate as follows:

| | |
|---|---|
| $ 835,200.94 | Total from standard VEBA contributions |
| ( 59,384.01) | Cost of life insurance premiums |
| ( 647,129.91) | Cost of health insurance premiums |
| ( 74,110.67) | Cost of medical reimbursement payments |
| $ 54,573.35 | Surplus |

*See also* **Ex. 2** Stock 2d Dep. 37:3–41:17 (explaining how to add up the premiums for Field Workers based on the Anthem and Companion Life Insurance Invoices produced by Queen City); **Ex. 10** Stock 2d Dep. exhibit 86 (Anthem Insurance invoices); **Ex. 11** Stock 2d Dep. exhibit 96 (Companion Life Insurance invoices); **Ex. 12** Deposition of Michael Katrosh taken on January 19, 2018 ("Katrosh 2d Dep.") 21:15–31:11 (explaining how to interpret the medical reimbursement reports); **Ex. 13** Katrosh 2d Dep. exhibit 90 (medical reimbursement summary for June 1, 2014 to May 26, 2015); **Ex. 14** Katrosh 2d Dep. exhibit 89 (medical reimbursement summary for June 1, 2015 to May 31, 2016); **Ex. 15** Katrosh 2d Dep. exhibit 88 (medical reimbursement summary for June 1, 2016 to May 31, 2017).

3

7.     Queen City regularly performs roofing and sheet metal services on Missouri government projects which require it to pay prevailing wage to its workers on those projects.

CITATION: **Ex. 1** Stock 1st Dep. 46:17–47:3; **Ex. 2** Stock 2d Dep. 13:13–14:8 (explaining that 18–23% of Queen City's work was on prevailing wage projects over the last five years); *see also* **Ex. 1** Stock 1st Dep. 47:4–13 (explaining that Queen City work on federal prevailing wage jobs was "negligible"); **Ex. 2** Stock 2d Dep. 31:5–14 (explaining that Queen City has only done one or two federal and/or Arkansas prevailing wage jobs during the last five years).

8.     On prevailing wage jobs, Queen City does not pay its workers at the prevailing wage rate solely in the form of cash wages.

CITATION: **Ex. 4** Barr Dep. 38:19–39:18 (explaining how additional contributions were made to the VEBA for prevailing wage jobs); **Ex. 1** Stock 1st Depo 80:7–86:23, 91:5 – 94:18; **Ex. 16** Stock VEBA Contribution Explanation.

9.     Instead of paying its workers at the prevailing wage rate when working on government projects, Queen City takes the differential—after applying a credit for the 5.8% 401(k) contribution and the $3.75 standard VEBA contribution—and deposits the additional funds into the company's VEBA (the "additional VEBA contributions").

CITATION: **Ex. 1** Stock 1st Depo 80:7–86:23, 91:5–94:18; **Ex. 16** Stock VEBA Contribution Explanation; **Ex. 2** Stock 2d Dep. 12:7–15 (confirming lack of change in VEBA contribution practices since prior deposition); **Ex. 4** Barr Dep. 18:18–22:15, 38:19–39:18 (explaining how additional contributions were made to the

4

VEBA for prevailing wage jobs), 44:23–45:11 (explaining that 401k contribution practices is the same for all Roofing and Sheet Metal workers and has been throughout the relevant time); **Ex. 3** Katrosh 1st Dep. 62:21–65:17 (explaining that the payroll, and $3.75 per hour contribution system has been the same for all roofing and sheet metal employees since 2007).

10.     Because the standard VEBA contribution of $3.75 per hour was sufficient to pay for all the fringe benefits provided the workers through the VEBA, these additional VEBA contributions provided the workers no additional benefits.

CITATION: **Ex. 4** Barr Dep. 92:14–99:5 (explaining how to read Queen City's VEBA contribution summaries); **Ex. 5** Barr Dep. exhibit 84 (Monthly VEBA Contribution Summary); **Ex. 6** FRE 1006 Summary: Field Worker VEBA Contributions for 6/1/2014–5/31/2017 (showing $835,200.94 in contributions based on Standard contributions and an additional $599,732.45 in prevailing wage contributions); **Ex. 7** FRE 1006 Summary: Companion Life Insurance Monthly Premium for 6/1/2014–5/31/2017 (showing $59,384.01 in premiums paid); **Ex. 8** FRE 1006 Summary: Anthem Health Insurance Monthly Premium for 6/1/2014–5/31/2017 (showing $647,129.91 in premiums paid); **Ex. 9** FRE 1006 Summary: Medical Reimbursement Payment for 6/1/2014–5/31/2017 (showing $74,110.67 in benefits paid to Field Workers). These amounts calculate as follows:

| | |
|---|---|
| $   835,200.94 | Total from standard VEBA contributions |
| _   599,732.45_ | Total from prevailing wage contributions |
| $ 1,434,933.39 | Total combined contributions to the VEBA |
| (     59,384.01) | Cost of life insurance premiums |
| (   647,129.91) | Cost of health insurance premiums |
| (_     74,110.67)_ | Cost of medical reimbursement payments |
| $   654,308.80 | Surplus |

*See also* **Ex. 2** Stock 2d Dep. 37:3–41:17 (explaining how to add up the premiums for Field Workers based on the Anthem and Companion Life Insurance Invoices produced by Queen City); **Ex. 10** Stock 2d Dep. exhibit 86 (Anthem Insurance invoices); **Ex. 11** Stock 2d Dep. exhibit 96 (Companion Life Insurance invoices); **Ex. 12** Katrosh 2d Dep. 21:15–31:11 (explaining how to interpret the medical reimbursement reports); **Ex. 13** Katrosh 2d Dep. exhibit 90 (medical reimbursement summary for June 1, 2014 to May 26, 2015); **Ex. 14** Katrosh 2d Dep. exhibit 89 (medical reimbursement summary for June 1, 2015 to May 31, 2016); **Ex. 15** Katrosh 2d Dep. exhibit 88 (medical reimbursement summary for June 1, 2016 to May 31, 2017).

11.    Queen City has used these additional funds to pay for company parties, to kickback money to the company in the form of so-called "administrative and legal expenses," and to amass a cash balance in the VEBA standing at $641,426 as of the VEBA's most recent accounting report produced, dated May 31, 2016.

CITATION: **Ex. 17** Queen City VEBA Financial Statements for May 31, 2016 and 2015 at 5; **Ex. 18** Queen City VEBA Financial Statements for May 31, 2015 and 2014 at 5; **Ex. 4** Barr Dep. 54:25–57:5 (explaining that the VEBA pays Queen City for certain administrative expenses); **Ex. 13** Katrosh 2d Dep. 34:16–22 (same along with membership functions, third-party administrators, legal counsel, and accountants), 38:15–40:10, 41:19–22; **Ex. 3** Katrosh 1st Dep. 155:3–164:16 (explaining prior accounting reports and explaining different categories of expenses incurred by the VEBA, including employee appreciation event).

## II.     Introduction

Defendant Queen City does not pay its workers a prevailing wage. Indeed, it pays far below the standard rate recognized by the State of Missouri for work of a similar character. And when its employees perform work on jobs commissioned by the State of Missouri—at which point Queen City is obligated by law to bring its pay up to the prevailing wage—Queen City takes the money it is supposed to pay its employees and diverts it to a so-called bona fide benefits plan that does not provide the workers with any additional benefits from these contributions. Rather, the prevailing wage money paid by the State is used to cover administrative expenses, fund company parties, and amass a substantial corpus in the company's fund.

The plain language of the Prevailing Wage Act only allows employers to take a credit against its prevailing wage obligations for contributions that provide the workers with "bona fide fringe benefits." That rule is consistent with the Act's stated purpose, which is to require workers laboring on state jobs to receive a minimum threshold of compensation.

Here, it is undisputed that the contributions Queen City has made to its VEBA—in lieu of paying its workers additional wages to bring them up to the prevailing wage—are not used to provide the workers with *any* benefits, let alone "bona fide fringe benefits." Indeed, that is a matter of mathematical certainty. As a result, Queen City has misdirected hundreds of thousands of dollars paid by the State of Missouri intended for the workers laboring on state projects. The company has violated the Prevailing Wage Act as a matter of law and the Court should grant the instant motion.

8

## III.  Argument

### A.  Summary judgment standard

"Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Hammontree v. Safeco Ins. Co. of Ill.*, 2016 U.S. Dist. LEXIS 160826, *3–4 (W.D. Mo. Nov. 21, 2016), citing Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Id.*, quoting *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). "Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Id.*, citing *Celotex*, 477 U.S. at 323. "If the movant meets the initial step, the burden shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.*, quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "To do so, the moving party must 'do more than simply show there is some metaphysical doubt as to the material facts.'" *Id.*, quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).[1]

---

[1] Along with this motion for summary judgment, Plaintiffs have filed a motion for class certification under FRCP 23. Typically, courts decide class certification before issuing a ruling on summary judgment. *See Hartley v. Suburban Radiologic Consultants, Ltd.*, 295 F.R.D. 357, 367 (D. Minn. 2013). This is because "a plaintiff who files a proposed class action cannot legally bind the members of the proposed class before the class is certified." *Id.*, quoting *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013). Thus, sequencing the decision on class certification before the decision on summary judgment prevents the so-called "one-way intervention" problem, in which a putative class member is informed of the Court's ruling on a substantive issue before deciding whether to agree to be bound by that ruling. For this reason, the prudent course is for the Court to first issue its ruling on class certification and then, if the Court grants the motion to certify, issue its ruling on the instant summary judgment motion after the close of the opt-out period for putative class members.

9

## B. The Missouri Prevailing Wage Act

In 1957, Missouri enacted the Prevailing Wage Act (the "PWA") based on the federal Davis-Bacon Act. *See State ex. rel. Laszewski v. R.L. Persons Construction, Inc.*, 136 S.W.3d 863, 870 (Mo. Ct. App. 2004). The purpose of these laws is to ensure that workers on public projects are paid reasonable wages. *See Long v. Interstate Read-Mix, L.L.C.*, 83 S.W.3d 571, 574 (Mo. Ct. App. 2002); Mo. Rev. Stat. § 290.220. Accordingly, the PWA is a remedial statute that must be interpreted "broadly so as to accomplish the greatest public good." *Mortenson v. Leatherwood Constr., Inc.*, 137 S.W.3d 529, 536 (Mo. Ct. App. 2004).

At issue in this case is the PWA's definition of "prevailing hourly rate of wages" which establishes the requirement of employers to pay at the prevailing wage and how that requirement may be satisfied through a combination of cash wage payments and fringe benefits. *See* Mo. Rev. Stat. § 290.210(8). The operative language in the Missouri PWA is virtually the same as the analogous provisions of the Davis-Bacon Act. *Compare* Mo. Rev. Stat. § 290.210(8) *with* 40 U.S.C. § 3141 *and* 40 U.S.C. § 3142(d).[2] Where federal statutes are in accord with Missouri law, cases interpreting those statutes are strong persuasive authority. *See State ex rel. Blue Cross & Blue Shield v. Anderson*, 897 S.W.2d 167, 170 (Mo. Ct. App. 1995) (following cases interpreting the federal rule's language when it is the same as Missouri's counterpart). Indeed, courts routinely look to cases interpreting the Davis-Bacon Act when analyzing the Missouri PWA. *See Henry County Water Co. v. McLucas*, 21 S.W.3d 179, 181 (Mo. Ct. App. W.D. 2000); *Long*, 83 S.W.3d at 578 (comparing Davis-Bacon

---

[2] 40 U.S.C. § 3141 was formerly codified at 40 U.S.C. § 276(a) and 40 U.S.C. § 3142(d) was formerly codified at 40 U.S.C. § 276a(b). Some of the cases cited in this memorandum reference these previously codified sections. While the statutes' codification has changed, the operative language has remained the same.

Act to the Missouri PWA and finding the Missouri PWA provides a broader remedy); *State ex rel. Webster v. Camdenton*, 779 S.W.2d 312, 318 (Mo. Ct. App. S.D. 1989) (same).

**C.    The Court should follow the intent of the legislature as stated in its explicit statement of the public policy behind the PWA and give meaning to every word in the definition of "prevailing hourly rate of wages."**

While axiomatic, it bears repeating that the primary rule of statutory interpretation is to give effect to the legislature's intent as reflected in the plain language of the statute. *See Behlmann v. Century Sur. Co.*, 794 F.3d 960, 964 (8th Cir. 2015); *McGuire v. Christian County*, 442 S.W.3d 117, 123 (Mo. Ct. App. S.D. 2014) (collecting Supreme Court cases). That is, "it is presumed every word, clause, sentence and provision of a statute of effect; conversely, it will be presumed idle verbiage or superfluous language was not inserted into a statute." *Chester Bross Constr. Co. v. Mo. Dep't of Labor & Indus. Rels.*, 111 S.W.3d 426, 427 (Mo. Ct. App. E.D. 2003) (interpreting the Missouri Prevailing Wage Act); *Cincinnati Ins. Co. v. Bluewood, Inc.*, 560 F.3d 798, 803–04 (8th Cir. 2009). And when interpreting a statute, words should be given their plain and ordinary meaning. *See B.W.A. v. Farmington R-7 Sch. Dist.*, 554 F.3d 734, 742 (8th Cir. 2009)*; State ex rel. Evans v. Brown Builders Elec. Co.*, 254 S.W.3d 31, 35 (Mo. banc 2008). But where reasonably possible, a statute's words should be read in context and construed together with the other provisions of the Act. *Id.*

Here, the Missouri legislature has explicitly stated the purpose of the PWA: to ensure that "a wage of no less than the prevailing hourly rate of wages for [similar work] shall be paid to all workmen" on public works projects. Mo. Rev. Stat. § 290.220. The State of Missouri could contract for rock-bottom wage labor. Instead, the General Assembly made a policy decision to pay what it considers a prevailing wage for the work performed by the workers who construct government buildings and complete government projects. *See*

11

*Henry County Water Co.*, 21 S.W.3d at 181. And of course, those wages are built into the bids that companies like Queen City submit when seeking to secure the government's work. *See* Mo. Rev. Stat. § 290.250.1 (setting out certain contractual requirements for public works). When Queen City was awarded a government contract, it accepted the legal obligation that it would actually pay those wages (in the form of cash or good faith fringe benefits) over to its workers covered by the PWA. *Id.*

In short, the legislative intent behind the statute is to regulate how much money workers are paid, not to set up rules for how the employer may justify paying less. Indeed, it is clear from the PWA's plain language that the legislature intended the PWA to regulate both what the employer pays and what the employee receives. *See* Mo. Rev. Stat. §§ 290.210–.230; *State ex rel. Laszewski*, 136 S.W.3d at 870–71 (holding that it is the employer's duty to insure the workers are paid correctly); *see also Henry County Water Co.*, 21 S.W.3d at 181, *overruled in part on other grounds by Div. of Lab. Stds. v. Friends of the Zoo of Springfield, Missouri,* 38 S.W.3d 421, 423 (Mo. 2001) (explaining that the public policy behind the PWA is to ensure that contractors pay what it considers to be the prevailing wage to Missouri workers engaged on public works). And Missouri courts have consistently rejected attempts to circumvent the PWA through a "carefully constructed legal facade" no matter how creative the employer may be. *See Friends of Zoo*, 38 S.W.3d at 423 (rejecting employer's attempt to circumvent the Prevailing Wage Act where a city project was funded by private charitable organization); *Thomas v. A.G. Elec., Inc.*, 304 S.W.3d 179, 186-87 (Mo. Ct. App. 2009) (rejecting the employer's argument that only payment bonds—not performance bonds—guarantee payment of prevailing wages); *State ex rel. Laszewski*, 136

12

S.W.3d at 871 (requiring the employer to pay prevailing wages to its workers even when classified as independent contractors).

### D. Queen City has failed to pay its workers at no less than the prevailing hourly rate on government projects as required by the PWA.

Plaintiffs' prevailing wage claim succeeds if they can show that they (1) performed work on a public works project for which they were entitled to receive the prevailing hourly rate of wages for similar work in the locality; and (2) they received less than the prevailing hourly rate of wages they were entitled to receive. *See* Mo. Rev. Stat. §§ 290.210, .230, .300. On the first prong, there is no dispute that Queen City employed Plaintiffs on public projects on which they were entitled to earn the prevailing wage. SOF ¶ 8. On the second prong, an employer may satisfy its obligation to pay covered workers the prevailing hourly rate of wages through a combination of cash payments and irrevocable contributions that bear the costs of a qualifying benefits "plan or program:"

> the obligation of a contractor or subcontractor to make payment in accordance with the prevailing wage determinations of the department, insofar as sections 290.210 to 290.340 are concerned, may be discharged by the making of payments in cash, by the making of irrevocable contributions by the assumption of an enforceable commitment to bear the costs of a plan or program as provided herein, or any combination thereof, where the aggregate of such payments, contributions and costs is not less than the rate of pay plus the other amounts as provided herein;

Mo. Rev. Stat. § 290.210(8). As the Missouri Court of Appeals has noted, only "qualifying plan contributions or reasonable benefit rates" can satisfy an employer's obligation under the PWA. *Huskey v. Queen City Roofing & Constr. Co.*, 523 S.W.3d 610, 618 (Mo. Ct. App.

2017). Or to use the phrasing employed by the legislature, it must be a "plan or program as provided herein." In language immediately preceding the clause quoted above, the statute provides that a valid benefits plan or program is one that is financially responsible, communicated in writing, and provides bona fide fringe benefits that the employer is not already required to provide:

> an enforceable commitment to carry out a financially responsible plan or program which was communicated in writing to the workmen affected, for medical or hospital care, pensions on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the foregoing, for unemployment benefits, life insurance, disability and sickness insurance, accident insurance, for vacation and holiday pay, for defraying costs of apprenticeship or other similar programs, or for other bona fide fringe benefits, but only where the contractor or subcontractor is not required by other federal or state law to provide any of the benefits;

Mo. Rev. Stat. § 290.210(8).

Here, it is undisputed that Queen City does not pay its workers at the prevailing wage in the form of cash wage payments. SOF ¶ 8. Instead, Queen City contends that because it makes contributions to a fund that provides at least some employee benefits that it complies with the PWA and the Court need look no further. But under the PWA, not any plan or program will do. The plain language of the Act requires that Queen City utilize a "plan or program *as provided herein*," meaning one that satisfies the statute's provisions. *See* Mo. Rev. Stat. § 290.210(8). Those provisions impose restrictions on what fringe benefit

payments may count towards the discharge of an employer's prevailing wage obligations, namely, the contributions must provide the workers with "bona fide fridge benefits." *Id.*

But the additional contributions that Queen City makes to its VEBA in lieu of paying additional wages to its workers do not provide the workers with *any* benefits, bona fide or otherwise. SOF ¶ 10. That is because the benefits provided through the VEBA are entirely paid for by the company's "standard contribution" of $3.75 for every hour worked by its employees. SOF ¶ 6. Indeed, during the relevant time period, Queen City has made $599,732.45 in additional contributions to the VEBA that have provided its workers no additional benefits. SOF ¶ 10. Instead of providing its workers with additional compensation (or fringe benefits) as required by the PWA, Queen City uses the additional funds diverted into the VEBA to pay for company parties, to kickback money to the company in the form of so-called "administrative and legal expenses," and to amass a cash balance in the VEBA standing at $641,426 as of May 31, 2016.[3] SOF ¶ 11. Given these undisputed facts, as a matter of law, Queen City has not complied with its obligations under the PWA.

The question presented by this case was analogously analyzed in *Miree Constr. Corp. v. Dole*, 930 F.2d 1536 (11th Cir. 1991). There, the Eleventh Circuit affirmed a decision disallowing the majority of the prevailing wage credits claimed by an employer. *Id.* at 1538–39. In *Miree*, the employer made a $0.25 per hour contribution to an apprenticeship program ("the ABC Plan") for its carpenters, bricklayers, and laborers over the course of multiple federal public works. *Id.* at 1538. The total contributions to the ABC Plan were

---

[3] The most recent accounting report produced by Queen City for its VEBA was for its 2015 fiscal year, which ends on May 31, 2016. Queen City took an extension on the deadline to file the 2016 IRS Form 5500 and has not yet produced updated reports for Fiscal Year 2017. *See* **Ex. 12** Katrosh 2d Dep. 36:15–25.

15

$11,293.52. But during the time the employer was performing prevailing wage work, it only had one employee enrolled in the ABC Plan's apprenticeship program. *Id.* The cost of enrollment for this single employee was $500. *Id.* The DOL Administrator determined that *Miree* could only receive credit for $500, the actual cost to enroll the one employee, not the total contributions made to the plan. *Id.*

The *Miree* court began its analysis by noting that the Davis-Bacon Act, like the Missouri PWA, allows an employer to meet its prevailing wage obligation in any combination of cash payments, contributions to a funded fringe benefit plan, or directly paying for fringe benefits (sometimes referred to as an "unfunded plan"). *See Miree*, 930 F.2d at 1542. During the case's earlier procedural history, there was an ongoing debate about whether a funded benefit plan, like the VEBA here, was subject to the requirement that the amount paid by the employer in credit toward the prevailing wage must bear a reasonable relationship to the cost reasonably anticipated in providing the benefit. *Id.* at 1543. The court held that the distinction between a funded plan and an unfunded plan, on this point, did not make a difference. *Id.* A reasonability requirement was implied by the purpose of the statute which was to benefit employees, not contractors. *Id.*, citing *United States v. Birmingham Constr. Co.*, 347 U.S. 171, 177 (1954); *compare* Mo. Rev. Stat. § 290.220 (declaring the policy of the state of Missouri that all workmen employed by or on public works shall receive the prevailing hourly rate of wage was similar work in that locality). The *Miree* court summarized its rationale by noting that, "[i]f an employer could make contributions to a fringe benefit plan that were not reasonably related to the benefits actually received by the employee, the employee would not receive an appropriate 'wage' as contemplated by the Act." *Miree*, 930 F.2d at 1543.

16

Based on that holding, the court explained that contributions to the ABC Plan above the amount actually required to provide the benefits conferred by the plan were not creditable against the employer's prevailing wage obligation. *Id.* at 1544. There, "Miree contributed $11,293.52 of money that otherwise could have been paid to employees in cash, yet provided only $500.00 worth of training to its employees." *Id.* at 1545. As such, Miree only received a credit of $500 toward its prevailing wage obligation. *Id., see also United States v. Coren*, 2008 U.S. Dist. LEXIS 71564 (E.D.N.Y. Aug. 29, 2008), *subsequent conviction affirmed*, 2011 U.S. App. LEXIS 19681 (2nd Cir. Sept. 27, 2011) ("If an employer could make contributions to a fringe benefit plan that were not reasonably related to the benefits actually received by such an employee, the prevailing wage statutes would have no effect: employers would incur no or little cost with respect to these employees and the covered class of employees will not receive the appropriate full wage."). Of course, here, the disparity is even more stark. Queen City diverted $599,732.45 of prevailing wage payments to its VEBA, took credit for the entirety of those payments, and the employees received precisely $0.00 in benefits as a result. SOF ¶ 9, 10. Under *Miree*, Queen City is not entitled to credit contributions which do not provide the employees a benefit.

In *William J. Lang Land Clearing, Inc. v. Adm'r, Wage & Hour Div., U.S. Dept. of Labor*, the court applied *Miree* to a situation similar to the one at bar. *See* 520 F. Supp. 2d 870, 882–85 (E.D. Mich. 2007). There, a federal trial court considered whether an employer's fringe benefit plan was, in fact, "bona fide" as required by the federal prevailing wage law. *Id.* The employer in *Lang*, like the one in this case, took prevailing wage credits for payments to a plan that provided health insurance. *Id.* at 883. The *Lang* health insurance plan provided different amounts of coverage to different employees. *Id.* That is, some

17

employees received more expensive health insurance for themselves and their families and some only received insurance for themselves. *Id.* The plan at issue in *Lang* did not account for differences in the cost of benefits provided to single employees and employees with dependents. *See William J. Lang Land Clearing, Inc.*, 520 F. Supp. 2d at 882. Rather, the employer took an annualized credit for all of its employees regardless of the costs it incurred in providing benefits to a particular employee and regardless of whether the employee was still in a waiting period to receive benefits. *Id.* at 884. The court held that an employer could not simply average its fringe benefit costs across all employees when the costs materially varied between the employees. *Id.* at 884. Rather, the employer needed to have calculated its prevailing wage credits for each employee, taking into account the value of the benefits actually provided to the employee. *Id.* at 884–85.

Here, all of Queen City's prevailing wage workers were treated the same way, in that the additional contributions made to the VEBA as an offset of Queen City's prevailing wage obligations provided the workers with no additional benefits. SOF ¶ 6,10. As explained by the *Lang* court, Queen City can only take credit for contributions made to a benefits fund to the extent those contributions conferred an actual benefit to each employee. *See William J. Lang Land Clearing, Inc.*, 520 F. Supp. 2d at 884.

## IV.    Conclusion

It is beyond dispute that the contributions that Queen City made to its VEBA instead of paying its employees the prevailing wage on government projects were wholly illusory. The entire cost of the benefits provided through the VEBA were covered by the standard contribution applicable to all employees regardless of the type of work they performed. Queen City took credit for the standard contributions against its prevailing wage

obligations, but also took credit for hundreds of thousands of dollars in additional contributions to its VEBA. Those additional contributions were not used to pay for one dollar of actual benefits provided to employees. Indeed, the additional contributions only served to divert money intended by the State to be used to pay the workers laboring on its projects. Queen City has violated the Missouri Prevailing Wage Act as a matter of law and Plaintiffs respectfully request the Court to grant the instant motion.

Date:    February 26, 2018                    Respectfully submitted,

                                              **LEAR WERTS LLP**

                                              /s/ Todd C. Werts
                                              Bradford B. Lear, No. 53204
                                              Todd C. Werts, No. 53288
                                              2003 West Broadway, Suite 107
                                              Columbia, Missouri 65203
                                              Tel:   573-875-1991
                                              Fax:   573-875-1985
                                              lear@learwerts.com
                                              werts@learwerts.com

                                              **CURRAN LAW FIRM, LLC**
                                              Robert D. Curran, No. 53440
                                              3516 S. National Avenue
                                              Springfield, MO 65807
                                              Tel:   417-823-7500
                                              Fax:   417-823-7510
                                              rob@curranlawfirm.com

                                              **ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

A copy of the above and foregoing was filed with the Court's CM/ECF system on this

26th day of February, 2018. That system will serve copies on all entered counsel.


                              /s/ Todd C. Werts